**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

DEBRA LONG,

          *Plaintiff,*

v.

MARIE MARCH, and BIG BEAR
PROPERTIES, LLC,

          *Defendants.*

Civil Action No. _____7:23cv00777_____

## COMPLAINT

    Plaintiff Debra Long, by counsel, files this Complaint against Defendants Marie March ("March") and Big Bear Properties, LLC ("Big Bear," and together with March, "Defendants"), and alleges as follows:

### PRELIMINARY STATEMENT

    1.    This case concerns the intentional and unabated discrimination against an elderly and disabled woman by Defendants, who not only took no action to prevent the severe sexual harassment of Ms. Long by their employee, but also refused to allow Ms. Long's Medicaid-approved caregiver and grandson to stay with her so that she could live safely and comfortably in her apartment. Worse still, when Ms. Long tried to exercise her right to be free from discrimination, Defendants retaliated, filing trespassing charges against her caregiver, refusing to change the locks on her Apartment to protect her from their harassing employee, and threatening to tow Ms. Long's vehicles in violation of the lease.

2.     In March 2022, Ms. Long moved into an apartment owned and leased by Defendant Big Bear Properties, LLC, located in Christiansburg, Virginia (the "Apartment").   Defendant March owns Big Bear and was Ms. Long's landlord.

3.     Ms. Long, who is over sixty (60) years old and disabled, lives on Social Security disability benefits and struggles with activities of daily living, including preparing meals, bathing, doing laundry, and getting around.   For a while, she has relied on her grandson to serve as her Medicaid-approved caregiver.

4.     Shortly after Ms. Long moved into the Apartment, the maintenance man and a co-tenant at the apartment complex, Earnest Smith ("Smith"), started harassing Ms. Long and her grandson.   Within a week, he was caught peeping into Ms. Long's bathroom, and, in May 2022, exposed his genitalia to Ms. Long while making sexually suggestive comments.   He also called Ms. Long day and night and shouted at her through the windows in her apartment.   When Ms. Long refused Smith's unwelcomed advances, he threatened to have her evicted.

5.     Smith also threatened to remove Ms. Long's grandson and only caregiver from the property, leaving Ms. Long alone and isolated.

6.     When Ms. Long contacted Defendant March to complain about Smith's behavior, March simply laughed and told Ms. Long to be nice to Smith.

7.     With no help from Defendants, Ms. Long was forced to obtain a protective order against Smith.   Nonetheless, Smith continued to harass her, including by threatening to **kill** and **rape** her.   Defendants knew of Smith's conduct but continued to allow him to reside and work at the same apartment complex as Ms. Long; they even refused to change the locks on Ms. Long's Apartment, giving Smith access to the Apartment with his master key.

8.      To make matters worse, while Mr. Smith's harassment was ongoing, in August 2022, Defendants informed Ms. Long that her grandson and caregiver could not stay at the Apartment overnight, claiming that he was not allowed to stay as an unapproved tenant.  When Ms. Long requested an accommodation, Defendant March refused, even though other, non-disabled tenants in the same complex had overnight guests who were also not listed tenants.

9.      In response, Ms. Long, through Legal Aid, contacted Defendants to request a reasonable accommodation that would allow Ms. Long's grandson and caregiver to stay in the Apartment.  Legal Aid provided letters to Defendants from Ms. Long's caregiving agency and her treating physician stating that she required her grandson to care for her needs overnight.

10.     Despite the objective evidence that Ms. Long required an overnight caregiver, Defendants refused Ms. Long's requested accommodation based on the false representation that they were not required to follow housing laws (contrary to the terms of their own lease).  March even stated that she was not running a "nursing home," confirming that her decision was based on animus against Ms. Long's age and disability.

11.     Defendants' conduct did not end there.  In September 2022, March had police charge Ms. Long's grandson and caregiver with trespass and removed him from the property.  Then, March threatened to tow Ms. Long's vehicles, in violation of the lease.  Thanks to March's retaliatory actions, for nearly three weeks, Ms. Long was left alone in her apartment, unable to properly eat or get around, and forced to endure the trauma of her harasser living doors away.

12.     Faced with Defendants' refusal to address the hostile environment created by Smith, as well as their own persistent discrimination and retaliation against her, Ms. Long was forced to move out of the Apartment and into a second apartment while still paying rent.  She also suffered severe emotional distress, which exacerbated her physical disabilities, caused her to seek

counseling, and, even today, has left her unable to properly sleep or live her life normally.  She has further been diagnosed with major depression disorder and post-traumatic stress disorder (PTSD) from the harassment, discrimination, and hostile environment Defendants promoted.

13.     Despite Ms. Long's attempts to resolve this matter through the administrative process, Defendants have refused to acknowledge and remedy their unlawful conduct.  They have also tried to intimidate Ms. Long into dropping her claims, using March's position as a state delegate to suggest that Ms. Long is fighting a losing battle.

14.     Defendants have therefore left Ms. Long with no choice but to bring this action for violations of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, the Virginia Fair Housing Law ("VFHL"), Va. Code § 36-96.1, *et seq.*, and Virginia common law.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over Ms. Long's FHA claims under 28 U.S.C. § 1331. It also has supplemental jurisdiction over Ms. Long's state-law claims under 28 U.S.C. § 1367.

16.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Long's claims occurred in this District, where Ms. Long resides and suffered the harm from Defendants' conduct.

## PARTIES

17.     Plaintiff Debra Long is a natural person who resides in Christiansburg, Virginia. At all times relevant to this Complaint, Ms. Long had a "handicap," as defined by 42 U.S.C. § 3602(h), and a "disability," as defined by Va. Code § 36-96.1:1, because she has one or more physical impairments that substantially limit her major life activities, has a record of having such an impairment, and/or is regarded as having such an impairment.  Ms. Long also qualifies as elderly under the VFHL because she attained her fifty-fifth birthday in 2012, before the events alleged herein occurred.  Va. Code § 36-96.1:1.

18.     Defendant Marie March is a natural person who resides in Virginia.  Defendant March is currently the elected delegate for the 7th District in the House of Delegates, until her term ends with the next session.  March is personally liable for the conduct alleged herein, including her violations of the FHA and VFHL, as she directly participated in, authorized, and/or ratified the discriminatory and retaliatory conduct alleged.  *See, e.g.*, *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1227 (W.D. Wash. 2012).

19.     Defendant Big Bear Properties, LLC, is a Virginia limited liability company with its principal place of business in Floyd, Virginia.  Defendant Big Bear is liable as the lessor and owner of the Apartment.

## FACTS

20.     Ms. Long, born June 2, 1957, is a longtime resident of Southwest Virginia.

21.     For approximately thirty years, Ms. Long has suffered from Chronic Pain Syndrome, which is indicated by pain lasting six months or longer.  This syndrome causes reduced mobility, sleep impairment, depression, social withdrawal, cognitive impairments, and other symptoms.

22.     In addition to her Chronic Pain Syndrome, Ms. Long also suffers from nerve damage and neuropathy after breaking her back several times from falling.  She has also suffered from diabetes for over thirty years.

23.     As a result of her conditions, Ms. Long cannot stand for more than a few minutes, and she has difficulty attending to personal hygiene, meal preparation, and household chores.  She is also unable to work and has received Social Security Disability Insurance benefits for approximately thirty years.

24.     Ms. Long's treating physicians have prescribed her a caregiver to assist her with these activities of daily living.  Ms. Long selected her grandson to serve as her caregiver under

Medicaid's consumer-directed program.  Ms. Long's caregiving agency, Anne Cares, approved

her grandson for this role.  If Ms. Long did not use her grandson, she would have to wait months,

if not years, on a waitlist for another caregiver.

        **A.**      **Ms. Long's Lease with Big Bear.**

      25.     In March 2022, while she was sixty-four (64) years old, Ms. Long signed a lease

with Big Bear for the Apartment.  *See* Exhibit A (Lease).  The lease had a termination date of

March 31, 2023, with the option to continue the lease on a month-to-month basis.

      26.     The Apartment qualified as a "dwelling" under the FHA and VFHL, as it was

occupied as, or designed or intended for occupancy as, a residence by one or more families.  42

U.S.C. § 3602(b); Va. Code § 36-96.1:1.  Indeed, the lease stated that the Apartment's purpose

was "as a residential dwelling."  Ex. A.  The Apartment was also not exempted from the FHA or

VFHL, because it was not a single-family house, nor was it a room or unit in a dwelling occupied

by no more than four families living independently of each other in which the owner of the

dwelling (March) resides in one such living quarter.  *See* 42 U.S.C. § 3603(b); Va. Code § 36-96.2.

      27.     Under the terms of the lease, Ms. Long paid $500 a month, as well as a $500

security deposit and $100 pet fee.  The lease also allowed Ms. Long to have "2 Parking Spaces."

      28.     The lease contained a prohibition on any person other than the named tenant living

in the Apartment.  As discovery will confirm, this was a standard term for all of Defendants'

tenants, including the other tenants in the same complex as Ms. Long.

      29.     The lease expressly prohibited discrimination against Ms. Long based on her

disabilities and encouraged her to request reasonable accommodations, stating:

> If the Tenant(s) possess(es) any mental or physical impairment, the Landlord shall
> provide reasonable modifications to the Premises unless the modifications would
> be too difficult or expensive for the Landlord to provide.  Any impairment of the
> Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing

in order to seek the most appropriate route for providing modifications to the Premises.

30.    The lease also prohibited any retaliation by Big Bear against Ms. Long, stating:

Landlord [Big Bear] is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**B.    Smith's Harassment of Ms. Long.**

31.    Defendants employed a groundskeeper/maintenance employee, Earnest Smith, at Ms. Long's apartment complex.  Smith also resided in the same complex.

32.    Within a week of Ms. Long moving into the Apartment, Ms. Long caught Smith peeping inside her bathroom window.

33.    In or around May 2022, Smith also exposed himself to Ms. Long and referred to himself as "Earnest Kong," in reference to his penis.

34.    Smith told Ms. Long's grandson that Ms. Long was his "girlfriend," and he repeatedly invited Ms. Long to go out with him.

35.    Smith also called Ms. Long several times a day at all hours to harass her, leave inappropriate messages, and threaten her.  He would yell through the windows of Ms. Long's Apartment, stating that her boyfriend was outside.

36.    Ms. Long repeatedly refused and rebuked Smith's advances and sexual harassment.

37.    When Ms. Long's grandson and caregiver tried to stop Smith's harassment, Smith turned his ire on the grandson, calling him several times a day and threatening to remove him from the property for trespassing.  Smith also falsely accused the grandson of cutting Smith's brake lines and tearing down a fence, even though Smith had himself run through the fence with his lawnmower.

38.     When Ms. Long refused Smith's advances and tried to stop his harassment, Smith threatened to evict her.

39.     Eventually, Ms. Long was forced to get her own P.O. box because Smith, as the agent of Defendants, had access to Ms. Long's personal mail.

### C.     Defendants Did Nothing to Stop Smith's Harassment.

40.     After Smith's harassment continued to escalate, in or around July 2022, Ms. Long reported Smith's conduct to Defendant March.  In response, March simply laughed at Ms. Long and told her to be nice to Smith.  She did nothing to stop Smith's harassing behavior or to remove him from the apartment complex.

41.     With no assistance from Defendants, Smith's harassment continued to escalate.  On or about August 22, 2022, Smith tried to have Ms. Long's grandson evicted from the property.  Thankfully, the police would not remove the grandson after learning that he was Ms. Long's Medicaid-approved caregiver.

42.     Facing Smith's continued harassment, and with no help from Defendants, Ms. Long pressed charges against Smith, and he was arrested on or about August 23, 2022.  Upon information and belief, Defendant March bailed Smith out of jail, allowing him to return to the apartment complex.

43.     Around the same time, Ms. Long reached out to Southwest Virginia Legal Aid, who advised her to obtain a protective order against Smith.

44.     On or about September 8, 2022, Ms. Long and her grandson obtained a two-year protective order against Smith.

45.     Despite the protective order, Smith's harassment continued.  Smith stalked Ms. Long, called her several times a day, and left voicemails threatening to kill and rape her.  He is now awaiting trial on charges of violating the protective order and for stalking.

**D.     Defendants' Discrimination and Retaliation Against Ms. Long.**

46.     While Smith's harassment was ongoing, and after Ms. Long had reported that harassment to Defendant March, in August 2022, March informed Ms. Long that her grandson and caregiver could not stay at the Apartment because he was not a named tenant.  Up until this point, March had allowed Ms. Long's grandson to stay between 7 a.m. and 8 p.m., but following Smith's arrest, March had an about face and said Ms. Long's caregiver could not stay at the Apartment at all.

47.     At or around this time, Ms. Long verbally asked March whether she could add her grandson to the lease.  Ms. Long explained to March that her grandson was an approved caregiver who assisted her with bathing, meal preparation, and other activities of daily living.

48.     March refused Ms. Long's request, even though Defendants allowed other non-elderly, non-disabled residents to have additional guests overnight in apartments of a similar size that had the same lease restrictions.  She told Ms. Long that she was not running a "nursing home," in a clear reference to Ms. Long's age and disabilities.

49.     After Defendants denied her requested accommodation, on August 31, 2022, Ms. Long, through Southwest Virginia Legal Aid, sent a letter to Defendants again requesting that Ms. Long be allowed to have her grandson and caregiver stay overnight and to come and go as needed to assist her.  Legal Aid provided Defendants with letters from Ms. Long's healthcare providers, including her treating physician and caregiving agency, Anne Cares, that explicitly stated that Ms.

Long required an overnight caregiver to "safely" reside in the Apartment.  *See* Exhibit B (Legal Aid letter and attachments).

50.    On September 9, 2022—a day after Ms. Long obtained a protective order against Smith, and shortly after March bailed Smith out of jail—March contacted Legal Aid and stated that Defendants would not allow Ms. Long's grandson to stay overnight.  March represented to Legal Aid, contrary to the law and the terms of Defendants' own lease, that the Apartment was not subject to fair housing laws as it was a "boardinghouse."[1]  She also reiterated that she was not "running a nursing home," in a clear reference to Ms. Long's age and disabilities.

51.    The same day, Ms. Long was forced to change the locks on her Apartment, at her own cost, after Defendants continually refused her requests to change the locks despite knowing of Smith's harassment and that Smith had a key to Ms. Long's Apartment.

52.    On September 12, 2022—four days after Ms. Long obtained the protective order against Smith and three days after stating that she did not run a "nursing home"—Defendant March came with police officers to Ms. Long's Apartment and served Ms. Long's grandson and caregiver with a trespassing citation.

53.    As a result of March's retaliatory conduct, Ms. Long was forced to reside alone in the Apartment for nearly three weeks, without any caregiver tending to her needs.  During that time, she was unable to eat properly, missing several meals.  She was also unable to care for herself.

---

[1] Ms. Long's statement that the Apartment was part of a boardinghouse was patently false.  A boarding house is a private home in which lodgers rent rooms on a nightly basis, and in which services such as laundry, cleaning, and meals are provided by the owner of the dwelling.  *Boardinghouse*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/boardinghouse.  It is not a leased apartment within a multi-unit complex in which Defendant March does not reside, as is the case here.  In any case, the Apartment does not fall within any exemption to the FHA or VFHL, whatever terminology March chooses to use.

And she suffered from increased anxiety and trauma, as she was without anyone to protect her against Smith, who continued to live in the same complex.

54.     The next day, on September 13, 2022, March continued her discriminatory and retaliatory conduct, this time threatening to tow Ms. Long's second vehicle if it was not removed by 5:00 p.m. the next day.  Ms. Long sent March a copy of her lease, which expressly permitted her to have two vehicles (the number she had) on the property.  March did not respond to this communication, forcing Ms. Long to remove one of her vehicles to avoid having it towed.

55.     After nearly three weeks living without a caregiver and facing Smith's threats to kill and sexually assault her, in or around September 24, 2022, Ms. Long was forced to leave her Apartment and to rent a hotel room and, eventually, a second apartment.  She continued to pay for two apartments for the remainder of the lease, which ended in March 2023.  She was also forced to pay for the cost of moving her things out of the Apartment.

56.     Defendants' harassment of Ms. Long did not end when she moved out, either.  March would stare down Ms. Long when she saw her in public, and when Ms. Long tried to move her things out of the Apartment, March and her husband and son attempted to intimidate her into settling her discrimination claims, implying that March's position as a state delegate gives her outsized influence with the authorities.

57.     Due to Defendants' conduct, Ms. Long has suffered significant emotional trauma.  She suffers from night sweats, experiences nightmare almost daily, and has difficulty concentrating, panic attacks, and severe anxiety.  She now attends counseling and has been diagnosed with major depression disorder and PTSD because of the hostile environment created and encouraged by Defendants.  Her physical disabilities have also worsened, including increased pain.  As a result, her ability to live independently has further diminished.

58.     Faced with Defendants' blatant discrimination and retaliation, Ms. Long has been forced to seek administrative relief before federal and state housing authorities, and she has even tried to settle this dispute with Defendants, all to no avail.  With Defendants unwilling to take responsibility for their unlawful conduct, and with their continued intimidation of her, she now brings the following action to obtain relief.

**COUNT ONE**
**Handicap Discrimination under the FHA, 42 U.S.C. § 3604(f)(2)**
**(Against All Defendants)**

59.     Ms. Long incorporates the preceding paragraphs.

60.     Defendants have discriminated against Ms. Long in the terms, conditions, and privileges of the rental of a dwelling because of Ms. Long's handicap, in violation of 42 U.S.C. § 3604(f)(2).

61.     Ms. Long requested that Defendants provide a reasonable accommodation to the terms of her lease by allowing her grandson and approved caregiver to reside in the Apartment overnight and to come and go as needed to care for her needs.

62.     Defendants refused to allow this accommodation, even though they allowed additional overnight occupants in apartments of a similar size to Ms. Long's apartment that were subject to the same lease restrictions, and in which non-handicapped individuals resided.

63.     Defendants' refusal constitutes discrimination under § 3604(f)(2) of the FHA, as "discrimination" is defined by § 3604(f)(3)(B).

64.     Ms. Long suffered financial and emotional damages from Defendants' discrimination, including but not limited to: paying for a hotel and second apartment so that her grandson and caregiver could attend for her needs, while also paying rent on the Apartment she was not able to use; paying for moving costs; the emotional distress and humiliation of having her

grandson removed from the Apartment by Defendant March; the emotional distress of being forced

to live alone without a caregiver for nearly three weeks; the exacerbation of her physical symptoms

and disabilities; and other emotional and financial harms.

65.     Defendants acted with malice and reckless indifference to Ms. Long's rights under

the FHA.  Defendants denied Ms. Long's request for a reasonable accommodation based on the

false representation that the Apartment was not subject to fair housing laws, in direct contravention

of the terms of Ms. Long's lease that Defendants had drafted, as well as the unambiguous language

of federal and state law.  Defendant March also dismissed Ms. Long's requested accommodation

as seeking to establish a "nursing home," confirming that her denial was based on animus toward

Ms. Long based on her age and disability, and not based on a good faith attempt to comply with

the law.  They refused Ms. Long's request even though they allowed other, non-disabled tenants

to have additional occupants not listed on their respective leases.  And Defendants retaliated

against Ms. Long when she complained about their discriminatory conduct.  Ms. Long is therefore

entitled to punitive damages.

66.     Based on Defendants' violations of the FHA, Ms. Long is entitled to actual and

punitive damages and attorneys' fees and costs under 42 U.S.C. § 3613.

## COUNT TWO
### Hostile Environment Harassment under the FHA, 24 C.F.R. § 100.600
### (Against All Defendants)

67.     Ms. Long incorporates the preceding allegations.

68.     Smith engaged in conduct that created a hostile environment, including by stalking,

exposing himself to, making sexually suggestive comments regarding, threatening to kill and rape,

and engaging in other harassing and threatening behavior towards Ms. Long.

69.     Smith's harassment interfered with Ms. Long's enjoyment of her Apartment and the facilities and services provided in connection therewith.  Ms. Long lived in fear of her life and suffered significant emotional distress due to Smith's conduct.  She was also forced to obtain a P.O. box, at her own expense, so that Smith could no longer go through her mail, as his position of employment allowed.  Ms. Long was further forced, at her own expense, to change the locks on her Apartment and, ultimately, to move out of the Apartment to avoid Smith's harassment and threats to her safety.

70.     Defendants are liable for creating this hostile environment because Smith's conduct was done within the scope of his employment and/or Defendants knew or reasonably should have known of Smith's conduct and failed to take immediate and appropriate corrective action, including, at a minimum, removing Smith from the apartment complex and changing the locks on Ms. Long's Apartment.

71.     Defendants had knowledge of Smith's harassment at least as of July 2022, when Ms. Long complained directly to Defendant March about Smith.  Defendants were also aware of the protective order and charges issued against Smith, which would have indicated to any reasonably diligent landlord that Smith had engaged in sufficiently hostile conduct to justify corrective action.

72.     Instead of taking corrective action, March laughed at Ms. Long's complaints and told her to be "nice" to Smith.  As outlined herein, March also retaliated against Ms. Long for seeking to prevent the harassment by obtaining a protective order and pressing charges.  Such conduct confirms that Defendants acted with malice and reckless indifference to the rights of Ms. Long, entitling her to punitive damages.

73.     Ms. Long suffered significant financial and emotional harm from Defendants' conduct, including but not limited to: paying for a P.O. box; paying to change the locks on her Apartment; paying for a hotel and second apartment to escape the harassment, while also paying rent for the Apartment; severe emotional harm; and exacerbation of her physical disabilities.

74.     Based on Defendants' violations of the FHA, Ms. Long is entitled to actual and punitive damages and attorneys' fees and costs under 42 U.S.C. § 3613.

## COUNT THREE
### Retaliation under the FHA, 42 U.S.C. § 3617
**(Against All Defendants)**

75.     Ms. Long incorporates the preceding allegations.

76.     Defendants unlawfully coerced, intimidated, threatened, and interfered in Ms. Long's exercise and enjoyment of her right to be free from discrimination based on her sex and handicap, in violation of 42 U.S.C. § 3617.

77.     Ms. Long notified Defendants in at least July 2022 that she was being sexually harassed by Defendants' employee, Earnest Smith, including through stalking, indecent exposure, harassment, and other unwelcomed threatening conduct.

78.     When Defendants refused to help her, Ms. Long was forced to take her own legal action to obtain a protective order and press charges against Smith.

79.     In or around August 2022, Ms. Long also requested an accommodation for her handicap that would allow her approved caregiver to reside in the Apartment overnight.

80.     Defendants had direct knowledge of Ms. Long's complaints regarding Smith, as well as the protective order that she was forced to obtain.  Defendants also had direct knowledge of Ms. Long's requested accommodation.

81.     In retaliation for Ms. Long taking action to prevent discrimination on account of her sex and handicap, Defendants intimidated and coerced Ms. Long, and interfered in the exercise of her rights, by, among other conduct: denying her requested accommodation the day after she obtained a protective order against Smith; having her caregiver charged with trespass and removed from the Apartment; refusing to change the locks on her Apartment; and threatening to tow Ms. Long's vehicles.

82.     As outlined above, Defendants retaliated with malice and reckless indifference to Ms. Long's rights under the FHA, entitling Ms. Long to punitive damages.

83.     Based on Defendants' violations of the FHA, Ms. Long is entitled to actual and punitive damages and attorneys' fees and costs under 42 U.S.C. § 3613.

## COUNT FOUR
### Disability Discrimination under the VFHL, Va. Code § 36-96.3(A)(9)
### (Against All Defendants)

84.     Ms. Long incorporates the preceding allegations.

85.     Defendants have discriminated against Ms. Long in the terms, conditions, and privileges of the rental of a dwelling because of her disabilities, in violation of Va. Code § 36-96.3(A)(9).

86.     Ms. Long requested that Defendants provide a reasonable accommodation to the terms of her lease by allowing her grandson and approved caregiver to reside in the Apartment overnight and to come and go as needed to care for her needs.  Ms. Long provided documentary evidence from her healthcare providers that she required a caregiver to assist her with activities of daily living based on her documented disabilities.

87.     Defendants refused to allow this accommodation, even though they allowed additional occupants in apartments of a similar size to Ms. Long's apartment that were subject to the same lease restrictions and that were leased to non-disabled individuals.

88.     Defendants' refusal constitutes discrimination under § 36-96.3(A)(9) of the VFHL, as "discrimination" is defined by § 36-96.3(B)(iii).

89.     Ms. Long suffered financial and emotional damages from Defendants' discrimination, including but not limited to: paying for a hotel and second apartment so that her grandson and caregiver could attend for her needs, while also paying rent on the Apartment she was not able to use; paying for moving costs; the emotional distress and humiliation of having her grandson removed from the Apartment by Defendant March; the emotional distress of being forced to live without any caregiver for nearly three weeks; the exacerbation of her physical symptoms and disabilities; and other emotional and financial harms.

90.     Defendants acted with malice and reckless indifference to Ms. Long's rights under the VFHL.  Defendants denied Ms. Long's request for a reasonable accommodation based on the false representation that the Apartment was not subject to fair housing laws, in direct contravention of the terms of Ms. Long's lease that Defendants had drafted, as well as the unambiguous language of federal and state law.  Defendant March also dismissed Ms. Long's requested accommodation as seeking to establish a "nursing home," confirming that her denial was based on animus toward Ms. Long based on her age and disability, and not based on a good faith attempt to comply with the law.  They refused Ms. Long's request even though they allowed other, non-disabled tenants to have additional occupants not listed on their respective leases.  And Defendants retaliated against Ms. Long when she complained about their discriminatory conduct.  Ms. Long is therefore entitled to punitive damages.

91.     Based on Defendants' violations of the VFHL, Ms. Long is entitled to actual and punitive damages and attorneys' fees and costs under Va. Code § 36-96.18.

<u>**COUNT FIVE**</u>
**Elderliness Discrimination under the VFHL, Va. Code § 36-96.3(A)(2)**
**(Against All Defendants)**

92.     Ms. Long incorporates the preceding allegations.

93.     Defendants have discriminated against Ms. Long in the terms, conditions, and privileges of the rental of a dwelling because of her elderliness, in violation of Va. Code § 36-96.3(A)(2).

94.     Ms. Long was over the age of fifty-five (55) the entire time that she lived in the Apartment.

95.     Due at least in part to her elderliness, Ms. Long requested that Defendants allow her grandson and approved caregiver to reside in the Apartment overnight and to come and go as needed to care for her needs.

96.     Defendants refused to allow this accommodation, even though they allowed additional occupants in apartments of a similar size to Ms. Long's apartment that were subject to the same lease restrictions and that were leased to non-elderly individuals.

97.     Ms. Long suffered financial and emotional damages from Defendants' discrimination, including but not limited to: paying for a hotel and second apartment so that her grandson and caregiver could attend for her needs, while also paying rent on the Apartment she was not able to use; paying for moving costs; the emotional distress and humiliation of having her grandson removed from the Apartment by Defendant March; the emotional distress of having to live without a caregiver; the exacerbation of her physical symptoms and disabilities; and other emotional and financial harms.

98.     Defendants acted with malice and reckless indifference to Ms. Long's rights under the VFHL.  Defendants denied Ms. Long's request for a reasonable accommodation based on the false representation that the Apartment was not subject to fair housing laws, in direct contravention of the terms of Ms. Long's lease that Defendants had drafted, as well as the unambiguous language of federal and state law.  Defendant March also dismissed Ms. Long's requested accommodation as seeking to establish a "nursing home," confirming that her denial was based on animus toward Ms. Long based on her age and disability, and not based on a good faith attempt to comply with the law.  They refused Ms. Long's request even though they allowed other, non-elderly tenants to have additional occupants not listed on their respective leases.  And Defendants retaliated against Ms. Long when she complained about their discriminatory conduct.  Ms. Long is therefore entitled to punitive damages.

99.     Based on Defendants' violations of the VFHL, Ms. Long is entitled to actual and punitive damages and attorneys' fees and costs under Va. Code § 36-96.18.

### COUNT SIX
### Retaliation under the VFHL, Va. Code § 36-96.5
### (Against All Defendants)

100.    Ms. Long incorporates the preceding allegations.

101.    Defendants unlawfully coerced, intimidated, threatened, and interfered in Ms. Long's exercise and enjoyment of her right to be free from discrimination based on her sex and disability, in violation of Va. Code § 36-96.5.

102.    Ms. Long notified Defendants in at least July 2022 that she was being sexually harassed by Defendants' employee, Earnest Smith, including through stalking, indecent exposure, harassment, and other unwelcomed threatening conduct.

103.    When Defendants refused to help her, Ms. Long was forced to take her own legal action to obtain a protective order against Smith's harassment.

104.    In or around August 2022, Ms. Long also requested an accommodation for her disability that would allow her approved caregiver to reside in the Apartment overnight.

105.    Defendants had direct knowledge of Ms. Long's complaints regarding Smith, as well as the protective order that she was forced to obtain.  Defendants also had direct knowledge of Ms. Long's requested accommodation.

106.    In retaliation for Ms. Long taking action to prevent discrimination on account of her sex and handicap, Defendants intimidated and coerced Ms. Long, and interfered in the exercise of her rights, by, among other conduct: denying her requested accommodation the day after she obtained a protective order against Smith; having her caregiver charged with trespass and removed from the Apartment; refusing to change the locks on her Apartment; and threatening to tow Ms. Long's vehicles.

107.    As outlined above, Defendants retaliated with malice and reckless indifference to Ms. Long's rights under the VFHL, entitling Ms. Long to punitive damages.

108.    Based on Defendants' violations of the VFHL, Ms. Long is entitled to actual and punitive damages and attorneys' fees and costs under Va. Code § 36-96.18.

### COUNT SEVEN
**Breach of Contract**
**(Against Defendant Big Bear)**

109.    Ms. Long incorporates the preceding allegations.

110.    In or about March 2022, Ms. Long executed a lease for the Apartment with Big Bear.  Ex. A.

111.    The lease constitutes a valid and binding contract, with consideration made in the form of monthly rental payments made by Ms. Long.

112.   The lease prohibited any retaliation by Big Bear against Ms. Long, stating:

Landlord [Big Bear] is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

113.   Defendant Big Bear breached this provision by, among other conduct: (a) denying Ms. Long's accommodation request after she obtained a protective order against Smith to prevent the hostile environment he had created; (b) having police charge Ms. Long's caregiver with trespassing and removing him from the Apartment; (c) refusing to provide new locks for her Apartment; and (d) threatening to tow Ms. Long's vehicles.

114.   Ms. Long has suffered harm because of Big Bear's breach including, but not limited to, being forced to pay for a hotel and second apartment so that she could have the assistance of her physician-approved caregiver; paying for new locks to her Apartment; and paying to move her personal items.

115.   Because of Big Bear's breach of contract, Ms. Long requests that the Court award her actual damages.

## COUNT EIGHT
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

116.   Ms. Long incorporates the preceding allegations.

117.   As outlined above, Defendants' employee, Smith, engaged in extreme harassing and threatening conduct, including but not limited to stalking, peeping, indecent exposure, harassing comments, and threatening to kill and rape Ms. Long.

118.   Ms. Long informed Defendants of Smith's harassment and threats and requested that they take action to prevent further harassment by Smith.  Defendants had the ability to take

action to, at a minimum, remove Smith from the apartment complex and change the locks on Ms. Long's Apartment, as she requested.

119.   Not only did Defendants not take any corrective action to prevent Smith's harassment, but they laughed at Ms. Long for complaining about him and shifted the blame to Ms. Long, telling her to be nicer to Smith.

120.   Defendants also refused to change Ms. Long's locks, while at the same time physically removing Ms. Long's only caregiver—and the only person with any ability to prevent Smith from harming Ms. Long—from the Apartment, leaving Ms. Long completely alone for nearly three weeks while the harassment by Smith continued and Ms. Long struggled to eat properly and care for herself.

121.   As a result of Defendants' intentional refusal to protect Ms. Long, Ms. Long has suffered severe emotional distress, including panic attacks, stress, fear for her life, nightmares, night sweats, sleep disturbances, paranoia, and acute anxiety.  Ms. Long has sought medical attention for these conditions, including counseling that she previously did not need.  She has also been diagnosed with major depression disorder and PTSD because of the hostile and traumatic environment that Defendants created.  And her physical conditions have worsened, resulting in increased pain that has further reduced her mobility and ability to care for her needs.

122.   Ms. Long was also forced to pay for new locks on her Apartment and to move into a second apartment to avoid Smith's continued harassment and sexual conduct.  Ms. Long continues to feel severe anxiety and paranoia over the danger of Smith carrying out his threats to kill and rape her and the traumatic experience of living in the Apartment alone while Smith resided doors away.  Ms. Long stays inside and avoids going out in public due to the trauma she

experienced.  When she does go out in public, she is constantly looking over her shoulder, worried that she will encounter Smith or Defendant March.

123.    Ms. Long's emotional distress could have been avoided had Defendants responded to Ms. Long's complaints.  Instead, they chose to dismiss Ms. Long and allow her to remain in an Apartment to which Smith had easy access.  They also chose to allow Smith to remain in a position of authority over her.  And when Ms. Long attempted to protect herself from the harassment, Defendants retaliated against her, removing her only caregiver and grandson from the Apartment, threatening to tow her vehicles, and intimidating her.

124.    Such conduct is outrageous, unconscionable, reckless, and intentional.

125.    Based on Defendants' conduct, Ms. Long is entitled to actual and punitive damages under Virginia law.

WHEREFORE, Ms. Long demands judgment for actual and punitive damages against Defendant; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court considers proper.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

**DEBRA LONG**

By: ___*/s/ Kristi C. Kelly*_____
Kristi C. Kelly, VSB #72791
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*